OMIAN v CHRYSLER GROUP LLC

Docket No. 310743. Submitted July 16, 2014, at Lansing. Decided February 26, 2015, at 9:05 a.m. Leave to appeal sought.

Monasser Omian obtained workers' compensation benefits from Chrysler Group LLC (now known as FCA US LLC) after an injury he sustained in November 2000 while working for Chrysler. Chrysler subsequently filed a petition to stop Omian's benefits, contending that he had been incarcerated for activities that demonstrated his physical and mental abilities to earn money, contrary to his claim of an ongoing disability. Omian argued that his involvement in a criminal enterprise did not prove he was capable of performing physical labor commensurate with his previous ability or employment. At a hearing on the petition, the parties presented conflicting evidence regarding Omian's ability to work. The magistrate admitted into evidence an order of judgment reflecting Omian's guilty-plea convictions on counts of conspiracy to commit federal crimes and aiding and abetting the structuring of financial transactions to evade reporting requirements, as well as a transcript of his arraignment and guilty-plea hearing. The magistrate, however, excluded exhibits proposed by Chrysler (including Exhibit D) that contained indictments against Omian and three other individuals, concluding that they were not relevant, that many of the allegations did not apply to Omian, and that the allegations were speculative because they did not all result in convictions. In addition, the magistrate also excluded evidence of the circumstances underlying the indictment. The magistrate denied the petition to stop Omian's benefits, and the Michigan Compensation Appellate Commission (MCAC) affirmed. In particular, the MCAC concluded that because the magistrate had considered the attack on Omian's credibility through his convictions and the conduct leading to them but still found Omian's evidence credible, those factual findings could not be set aside. The MCAC concluded that the magistrate had carefully considered Chrysler's proffer of its proposed exhibit within the context of MRE 609, which relates to the use of convictions as impeachment evidence of conviction of crime, and had properly exercised her discretion to allow introduction of the convictions and the guilty-plea transcript but

exclude the charging documents, which included information related to other individuals besides Omian and counts that did not necessarily form the basis of his guilty plea. The MCAC did not address the magistrate's exclusion of evidence of the facts underlying the counts of the indictment to which Omian did not plead guilty and the expert testimony based on those facts. Chrysler appealed.

In separate opinions, the Court of Appeals *held*:

1. The MCAC did not err by affirming the magistrate's decision to exclude Exhibit D.

2. The ability to engage in illegal activity does not equate with the ability to earn wages.

3. The MCAC operated under the wrong legal framework with respect to the magistrate's exclusion of evidence of the facts underlying Omian's indictment because it did not first decide whether those facts should have been part of the whole record that MCL 418.861a(3) required the MCAC to consider before determining that the magistrate's findings of fact were conclusive.

4. Under the wrongful-conduct rule, a plaintiff's action is precluded or barred if the plaintiff suffered the injury while and as a proximate result of committing an illegal act. The issue of whether the wrongful-conduct rule barred Omian's action in this case, however, was not properly before the Court of Appeals.

Reversed and remanded for further proceedings.

WILDER, J., wrote the lead opinion and stated that indictments are generally admissible under a hearsay exception to the extent that they reflect a judgment of conviction. Given Omian's voluntary entry of a guilty plea to four counts of the indictment, those portions of the indictment were not inadmissible hearsay. Nevertheless, the magistrate did not err by finding that portions of the indictment were speculative and not relevant because the excluded evidence referred to individuals other than Omian, failed to indicate whether it applied to all or only some of the individuals, and did not specifically identify what monies Omian had actually received from his participation in the conspiracy. The indictment's allegations against others and the unproved allegations against Omian were not material to his credibility or ability to earn wages and were irrelevant under MRE 402. The MCAC's decision to affirm the magistrate's exclusion of Exhibit D was therefore not based on erroneous legal reasoning or the wrong legal framework. Unlike the aspects of the indictment that were properly considered irrelevant, however, some of the remaining

allegations, as well as testimony tending to prove those allegations, might have been relevant to Omian's credibility. Evidence of Omian's bank records could have been relevant and admissible in light of the evidence that he opened a large bank account after his injury. Chrysler could also have properly offered the testimony of Omian's coconspirators insofar as it concerned Omian's ability to earn wages or secure employment. Had Chrysler offered evidence tending to prove the facts underlying the indictment, which were prejudicial to Omian, that evidence and the facts established by his plea agreement would have served as the basis for expert testimony about his ability to work. The magistrate erred by excluding that evidence. Because the MCAC did not first decide whether the facts underlying Omian's indictment should have been part of the whole record, the MCAC operated under the wrong legal framework and it was necessary to remand the case to the MCAC for proper consideration of Chrysler's argument. Finally, Judge WILDER concluded that Chrysler had not preserved for review the issue of the wrongful-conduct rule.

STEPHENS, J., agreed with Judge WILDER that the MCAC operated under the wrong legal framework when it failed to address the magistrate's decision to exclude not only the indictment but the testimony of any witness who could testify about the facts that gave rise to that indictment. She further agreed with Judge RONAYNE KRAUSE that the ability to engage in illegal activity does not equate with the ability to earn wages. She did not, however, agree that the physical and mental efforts required in every illegal activity have no bearing on an individual's ability to earn legal wages or perform work. For example, while passively laundering funds would likely not translate into evidence of the ability to engage in legal work, managing those laundered funds by arranging for transfers, keeping records of the transactions, and delivering the funds to third parties could be relevant to the ability to earn legal income. Chrysler requested and was refused the opportunity to present witnesses to testify to the facts underlying the indictment. Judge STEPHENS could not conclude as a matter of law that the evidence had no legal relevance. Therefore, it was necessary for the MCAC to review the issue.

RONAYNE KRAUSE, P.J., agreed that Exhibit D was technically admissible, but the magistrate's decision to exclude it and the MCAC's decision to affirm that exclusion were not clearly erroneous. She further agreed with Judge WILDER that the wrongful-conduct rule was not properly before the panel. She disagreed, however, that the exclusion of additional evidence that might have supported some of the allegations in Exhibit D constituted

an error warranting reversal. A demonstrated ability to generate income from illegal activities, standing alone, does not necessarily prove anything relevant to workers' compensation benefits. A person's wage-earning capacity is defined as the wages that can be earned at a job reasonably available. As a matter of public policy, it would be dangerous to consider illegal activities as reasonably available jobs because that would dramatically increase the burden of a claimant attempting to show entitlement to compensation and benefits and could encourage illegal activity. While the specific acts a person undertakes can demonstrate that the person has the ability to perform those acts, the fact that the person managed to derive some revenue from illegal conduct does not by itself constitute evidence of a capacity for gainful employment. The fact that Omian's illegal activity was more or less profitable cast no light on his credibility regarding what he could actually perform as legitimate employment. Chrysler's argument amounted to a bare assertion that profiting from a crime equals proof of wage-earning capability. Without support for that position, there was no error warranting reversal, and Judge RONAYNE KRAUSE would have affirmed the MCAC.

*Mancini, Schreuder, Kline, PC* (by *Roger R. Kline*), and *Daryl Royal* for Monasser Omian.

*Lacey & Jones, LLP* (by *Carson J. Tucker*), for Chrysler Group LLC.

Before: RONAYNE KRAUSE, P.J., and WILDER and STEPHENS, JJ.

WILDER, J. Following remand by the Michigan Supreme Court, defendant, Chrysler Group LLC, appeals as on leave granted the order of the Michigan Compensation Appellate Commission (MCAC),[1] affirming the magistrate's denial of defendant's petition to stop the benefits of plaintiff, Monasser Omian, under the Work-

---

[1] The Michigan Compensation Appellate Commission serves as the successor of the Workers' Compensation Appellate Commission. Executive Order No. 2011-6, effective August 1, 2011. See also *McMurtrie v Eaton Corp*, 490 Mich 976 (2011).

er's Disability Compensation Act (WDCA), MCL
418.101 *et seq. Omian v Chrysler Group LLC*, 495 Mich
859 (2013). We reverse and remand.

I

Plaintiff qualified for workers' compensation ben-
efits because of a back injury incurred while working
for defendant on November 9, 2000. Defendant subse-
quently filed a petition to stop plaintiff's benefits,
contending that he had been incarcerated for activities
that demonstrated his physical and mental abilities to
earn money, contrary to his claim of an ongoing dis-
ability. Plaintiff countered that his involvement in a
criminal enterprise did not prove he was capable of
performing physical labor commensurate with his pre-
vious ability or employment.

The parties presented conflicting evidence regarding
plaintiff's ability to work. Dr. Philip J. Mayer exam-
ined plaintiff once and found symptom embellishment.
Mayer opined that it was "improbable that [plaintiff]
would have not shown any improvement over the past
6-8 years." Mayer asserted he "would not recommend
restrictions of activity" and that "[r]est is not an
appropriate treatment for back pain." On the other
hand, plaintiff's treating physician, Dr. D. Bradford
Barker, opined that, as a result of his back injury,
plaintiff could not work on the auto line, as he had
done before, or do completely sedentary work because
prolonged sitting causes pain. Plaintiff's psychiatrist,
Dr. Mufid Al-Najjar, opined that plaintiff's major de-
pressive disorder contributes to his inability to tolerate
pain and results in feelings of frustration and hope-
lessness. Further, a certified rehabilitation counselor,
James Fuller, opined that plaintiff had limited English
language capability and no computer skills, making

him only eligible for sedentary, unskilled employment that was not commensurate with his former earning capacity.

The magistrate admitted into evidence Exhibit C, an order of judgment reflecting plaintiff's conviction by guilty plea to Counts 1 and 4 of a federal indictment. Count 1 of the indictment alleged that plaintiff was involved in a conspiracy to commit federal crimes, whereas Count 4 alleged that plaintiff had aided and abetted the structuring of financial transactions to evade reporting requirements. Pursuant to a plea agreement, all remaining counts in the indictment were dismissed, and plaintiff was sentenced to 30 months' imprisonment. The magistrate also admitted into evidence Exhibit E, a copy of the May 11, 2006 transcript of plaintiff's arraignment and guilty-plea hearing. In pleading guilty to the felony charges, plaintiff admitted having established bank accounts in his name from which he was sending money to Yemen and Switzerland. Plaintiff also admitted that he had allowed approximately 50 deposits of less than $10,000 into his accounts by other individuals and that the dollar amount of these transactions was chosen with the intent to avoid Internal Revenue Service (IRS) reporting requirements. Plaintiff testified that, despite the sizeable deposits, he only received $10 for each transfer made, and he also claimed that the earnings occurred before he was receiving workers' compensation benefits.

The magistrate excluded defendant's proposed Exhibits B and D (the grand jury indictment and a 48-page superseding indictment[2] against plaintiff and

---

[2] Some of the charges overlap for the individuals charged, and some are distinctly applicable only to certain individuals or alleged coconspirators, but not to plaintiff.

three other individuals), concluding that they were not relevant, that many of the allegations did not apply to plaintiff, and that the allegations were speculative because they did not all result in convictions. The magistrate continued to refuse to admit Exhibit D, even after defendant proposed to redact it to exclude references to the three other charged individuals as well as those charges that were dismissed as a result of plaintiff's guilty plea.

In addition to excluding aspects of the indictment, the magistrate also rebuffed defendant's effort to introduce evidence of the circumstances underlying the indictment insofar as they did not directly relate to plaintiff's guilty plea, particularly during defendant's examination of plaintiff. For example, defendant was precluded from asking plaintiff whether he had five accounts at Comerica Bank, whether plaintiff and his son were the only approved signatories to the account containing $24,000, and when that account was opened.[3] In addition, the magistrate sustained objections regarding Al-Najjar's and Fuller's opinions of plaintiff's ability to work when defendant presented hypothetical questions to them that included the facts underlying the indictment. Fuller was precluded from testifying about whether various activities, including repackaging controlled substances and contraband cigarettes for sale, altering stamps, and laundering profits through hawala accounts,[4] demonstrated skills

---

[3] Plaintiff did not assert a Fifth Amendment right against self-incrimination when these questions were asked.

[4] "Hawala" is a widely used alternative remittance system that operates outside of or parallel to traditional banking or financial channels. It works by transferring money without actually moving it, relying on trust and extensive use of connections such as familial relationships or regional affiliations. Jost & Sandhu, *The Hawala Alternative Remittance System and Its Role in Money Laundering,*

that were transferable to other employment opportunities. Also precluded was Al-Najjar's opinion regarding whether plaintiff could have been faking a flat affect during therapy while simultaneously committing outside therapy the crimes alleged.

In an opinion denying defendant's petition to stop benefits, the magistrate rejected the testimony of Mayer and found Barker, as the treating physician since 2002, credible. The magistrate further stated:

> I find that Plaintiff has testified credibly with regard to all issues of his workers' compensation case .... I am cognizant of Plaintiff's guilty plea. There is no question this was a serious crime. He served a sentence of 23 months in the federal prison system. (Defendant's Exhibits C and E.) However, the question that I must answer here is whether Plaintiff has recovered from his work-related disability. I find that he has not.
>
> * * *
>
> Dr. Barker's diagnoses and restrictions are the same. Dr. Al-Najjar described the same man that I observed in this Agency on three different occasions. Plaintiff's presentation and his complaints are the same. I find that Defendant has failed to demonstrate by a preponderance of evidence that Plaintiff has recovered from his disability. The Petition to Stop is denied.

Adopting the magistrate's summary of the evidence under MCL 418.861a(10) and affirming the magistrate's ruling, the MCAC determined, in relevant part:

> We conclude that the magistrate's findings that plaintiff remains compensably disabled are supported by com-

---

Financial Crimes Enforcement Network and INTERPOL/FOPAC, p 5, available at <http://www.treasury.gov/resource-center/terrorist-illicit-finance/Documents/FinCEN-Hawala-rpt.pdf> [https://perma.cc/2PMY-PLE6].

petent, material, and substantial evidence on the whole record, and we therefore affirm those findings. MCL 418.861a(3). Dr. Barker's credited conclusions of disability coupled with plaintiff's credited testimony consistent with the conclusion of disability referenced by Dr. Barker are by themselves adequate to insulate the magistrate's findings of continued disability from being set aside by us. Adding the testimony of the plaintiff's vocational consultant simply provides yet a further basis for concluding that the magistrate's findings of continued disability must be affirmed.

\* \* \*

Because we conclude that the magistrate considered the attack on plaintiff's credibility through his criminal convictions and conduct leading to same, but determined that she accepted plaintiff's testimony as credible, we conclude that MCL 418.861a(3) . . . insulate[s] these findings from being set aside. Flowing from this determination that these factual findings may not be set aside, we also conclude that the overall determination to deny the petition to stop must be affirmed.

\* \* \*

. . . The magistrate carefully considered the proffer of defendant's proposed Exhibit D within the context of MRE 609, the evidence rule relating to impeachment by evidence of conviction of crime. We conclude that the magistrate properly exercised her discretion to allow introduction of the criminal conviction and the guilty plea transcript, but excluding the charging document which included information related to other individuals besides plaintiff and counts that did not necessarily form the basis for plaintiff's guilty plea. [*Omian v Chrysler Group LLC*, 2011 ACO 98, pp 19-20.]

In its opinion, the MCAC did not address the magistrate's exclusion of evidence of the facts underlying the

counts of the indictment to which plaintiff did not plead guilty and the expert testimony based on those facts.

II

Defendant contends the MCAC erred by affirming the magistrate's decision to exclude not only proposed Exhibit D, but also the evidence, including expert testimony, that related to the facts underlying the indictment. We disagree in part, but we also agree in part.

As discussed by this Court in *Moore v Prestige Painting*, 277 Mich App 437, 447; 745 NW2d 816 (2007):

> The [commission] must review the magistrate's decision under the "substantial evidence" standard, and we review the [commission's] findings of fact under the "any evidence" standard. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 702-704; 614 NW2d 607 (2000). Our review begins with the [commission's] decision, not the magistrate's. *Id.* "Findings of fact made or adopted by the [commission] are conclusive on appeal, absent fraud, if there is any competent evidence in the record to support them." *Tew v Hillsdale Tool & Mfg Co*, 268 Mich App 399, 405; 706 NW2d 883 (2005). We review de novo "questions of law involved in any final order of the [commission]." *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). "[A] decision of the [commission] is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *Id.* at 401-402.[5]

In addition, "[t]his Court reviews a . . . decision to admit evidence for an abuse of discretion; however, when the . . . decision involves a preliminary question of law,

---

[5] Sixth alteration in original.

such as whether a statute precludes the admission of evidence, a de novo standard of review is employed." *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 275-276; 730 NW2d 523 (2006).

MCL 418.841(6) provides, in relevant part: "The rules of evidence as applied in a nonjury civil case in circuit court shall be followed as far as practicable, but a magistrate may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." But see *Yakowich v Dep't of Consumer & Indus Servs*; 239 Mich App 506, 511; 608 NW2d 110 (2000) ("[H]earsay evidence is generally inadmissible, as provided in the rules of evidence.").

A

The MCAC did not err by affirming the magistrate's decision to exclude proposed Exhibit D. In *Mike's Train House, Inc v Lionel, LLC*, 472 F3d 398, 412 (CA 6, 2006),[6] the United States Court of Appeals for the Sixth Circuit determined that indictments are admissible as an exception to the hearsay rule, at least to the extent they reflect a judgment of conviction. Specifically, the federal court determined:

> The . . . court records, including the indictments, are admissible under [FRE] 803(22),[7] which excepts judgments of previous convictions from the general ban

---

[6] "Although the decisions of lower federal courts are not binding precedents, federal decisions interpreting Michigan law are often persuasive." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 715-716; 742 NW2d 399 (2007) (citation omitted).

[7] " 'The Michigan Rules of Evidence were based on the Federal Rules of Evidence.' As a result, Michigan courts have referred to federal cases interpreting rules of evidence when there is a dearth of related Michigan case law." *People v Katt*, 468 Mich 272, 280; 662 NW2d 12 (2003)

against hearsay. Several courts have held that an indict-
ment from a previous conviction is properly included
within the scope of [FRE] 803(22) and is thus admissible
despite being hearsay. [*Id.* (citations omitted).]

Given plaintiff's voluntary entry of a guilty plea to
Counts 1 and 4 of the indictment, those portions of the
indictment were not inadmissible hearsay.

Nevertheless, the magistrate did not err by finding
portions of the indictment "not relevant" and "specu-
lative" because the excluded evidence referred to
individuals other than plaintiff, failed to indicate
whether it was applicable to all or only some of the
individuals, and did not specifically identify what
monies plaintiff had actually received from his par-
ticipation in the conspiracy as alleged. MRE 402
provides, "Evidence which is not relevant is not ad-
missible." Relevant evidence must be material or
"related to a fact of consequence to the action, and . . .
have a tendency to make the existence of a fact of
consequence to the action more probable or less
probable than it would be without the evidence."
*Lanigan v Huron Valley Hosp, Inc*, 282 Mich App 558,
564 n 6; 766 NW2d 896 (2009). The indictment's
allegations against others and the unproved allega-
tions against plaintiff were not material to plaintiff's
credibility or his ability to earn wages. The MCAC
reasoned that even without the evidence of the indict-
ment, the magistrate had an adequate opportunity to
consider the attack on plaintiff's credibility given the
evidence of his actual convictions. We cannot conclude
that the MCAC's decision to affirm the magistrate's
exclusion of proposed Exhibit D was "based on erro-

(citation omitted). A review of FRE 803(22) reveals that the wording is
substantially similar to that of MRE 803(22).

neous legal reasoning or the wrong legal framework."
*DiBenedetto*, 461 Mich at 401-402.

B

However, unlike the aspects of the indictment just
described, which were properly considered irrelevant,
some of the remaining allegations in the indictment, as
well as testimony tending to prove those allegations,
might have been relevant to plaintiff's credibility. MRE
402. Thus, the magistrate erred by excluding this
evidence. For example, plaintiff conceded during oral
argument on appeal that evidence of plaintiff's bank
records would have been relevant and admissible given
that defendant had offered evidence that plaintiff
opened a Comerica account with a $24,000 deposit
sometime after he suffered his injury, despite plain-
tiff's testimony to the contrary that his participation in
the charged offenses occurred before he started collect-
ing workers' compensation benefits. In addition, plain-
tiff conceded that defendant could also have properly
offered the testimony of plaintiff's coconspirators inso-
far as it concerned plaintiff's capability of earning
wages or securing employment. Had defendant offered
evidence tending to prove the facts underlying the
indictment, which were prejudicial to plaintiff, that
evidence, in addition to the facts established by his
plea agreement, would have served as the basis for
expert testimony about plaintiff's capability to work.

The magistrate did not address the relevance of the
facts underlying the indictment, but excluded that
evidence merely because it was information contained
in the exhibits she had also excluded. On appeal, the
MCAC affirmed the magistrate's findings of fact and
the denial of the petition to stop benefits without
addressing defendant's argument that the magistrate

erred by excluding from evidence the facts underlying the indictment. Under MCL 418.861a(3), the MCAC was required to consider the whole record before determining that the magistrate's findings of fact were conclusive. Because the MCAC did not first decide whether the facts underlying plaintiff's indictment should have been part of the whole record, we conclude that the MCAC operated under the wrong legal framework. *DiBenedetto*, 461 Mich at 401-402. We therefore remand this case to the MCAC for proper consideration of defendant's argument.

III

Defendant also asserts the applicability of the wrongful-conduct rule, contending that plaintiff, in light of his federal criminal convictions, was engaged in wrongdoing and should not be permitted to benefit from those crimes through the ongoing collection of workers' compensation benefits.

Workers' compensation issues raised for the first time in a pleading in this Court are not preserved for review. Defendant did not raise the issue of the applicability of the wrongful-conduct rule before the magistrate or MCAC. Because the issue is raised for the first time on appeal to this Court, it is not properly preserved, *Auto-Owners Ins Co v Amoco Prod Co*, 468 Mich 53, 65; 658 NW2d 460 (2003),[8] and this Court lacks authority to review it, *Calovecchi v Michigan*, 461 Mich 616, 626; 611 NW2d 300 (2000). See also *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 637; 808 NW2d 471 (2010).

---

[8] See MCL 418.861a(11) ("The commission or a panel of the commission shall review only those specific findings of fact or conclusions of law that the parties have requested be reviewed.").

Even if this Court had authority to address this issue, it would be unavailing to defendant. As discussed by our Supreme Court, for a plaintiff's action to be precluded or barred by the wrongful-conduct rule, " '[the plaintiff's] injury must have been suffered while and as a proximate result of committing an illegal act.' " *Manning v Bishop of Marquette*, 345 Mich 130, 136; 76 NW2d 75 (1956), quoting *Meador v Hotel Grover*, 193 Miss 392; 9 So 2d 782 (1942). Defendant has not argued that plaintiff's injury bears any relationship to the crimes alleged against plaintiff or the crimes of which he pleaded guilty.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs under MCR 7.219 because none of the parties prevailed in full.

STEPHENS, J. I agree with the lead opinion that the Michigan Compensation Appellate Commission (MCAC) operated under the wrong legal framework by failing to address the magistrate's decision to exclude not only the indictment but the testimony of any witness who could testify about the facts that gave rise to that indictment. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000). I agree with Judge RONAYNE KRAUSE that the ability to engage in illegal activity does not equate with the ability to earn wages within the meaning of the statute. However, I cannot say that the physical and mental efforts required in every illegal activity have no bearing on an individual's ability to earn legal wages or perform work. For example, while passively laundering funds would likely not translate into evidence of the ability to engage in legal work, managing those laundered funds by arranging for transfers, keeping records of the transactions, and delivering the funds to third parties

could be relevant to the ability to earn legal income. I agree that the argument here is laced with hyperbole, but the record does provide proof that defendant requested and was refused the opportunity to present witnesses to testify to the facts underlying the indictment. Whether upon review the MCAC will conclude that the magistrate's decision to decline to admit that evidence was in error remains to be seen. However, because I cannot conclude as a matter of law that the evidence has no legal relevance, I concur that the MCAC should review the issue.

RONAYNE KRAUSE, P.J. I respectfully disagree with certain portions of the lead opinion. I agree entirely with its reasoning and conclusions that defendant's "Proposed Exhibit D," a copy of a federal indictment against plaintiff and several other individuals, was technically admissible, but that the magistrate's decision to exclude it and the decision of the Michigan Compensation Appellate Commission (MCAC) to affirm that exclusion were not clearly erroneous. I also agree with the lead opinion that the wrongful-conduct rule is not properly before this Court and would not be of any use to defendant if it were. I respectfully disagree with the lead opinion's conclusion that the magistrate's exclusion of certain additional evidence ostensibly supporting some of the allegations in Exhibit D constituted an error warranting reversal.

As an initial matter, I am highly skeptical that a demonstrated ability to generate income from illegal activities, standing alone, necessarily proves anything relevant to workers' compensation benefits. In relevant part, "wage earning capacity" is defined as the wages that can be earned at "a job reasonably available." See MCL 418.301(4)(b), MCL 418.302, and

MCL 418.401(2)(c).[1] Neither the Legislature nor our Supreme Court has precisely defined what exactly constitutes a reasonably available job, and indeed, the word "job" is not defined at all. However, I think as a matter of public policy, it would be dangerous to consider illegal activities to be reasonably available jobs. For one thing, that would dramatically increase the burden of a claimant attempting to show entitlement to compensation and benefits. See *Stokes v Chrysler LLC*, 481 Mich 266, 281-285; 750 NW2d 129 (2008). For another, it could effectively encourage illegal activity if we were to recognize those activities as in any way reasonable. Finally, because we have functional law enforcement systems in both this state and this country, illegal conduct, however profitable it may be in the short term, is inherently unstable and ephemeral. Although the specific acts undertaken by a person might of course demonstrate that the person has the ability to perform those acts, with whatever implications come with it, the fact standing alone that the person has managed to derive some revenue from illegal conduct does not, in my opinion, itself consti-

---

[1] This statutory definition of "wage earning capacity" was enacted by 2011 PA 266 and applies only to injuries that occurred on or after its effective date, December 19, 2011; plaintiff's injuries would therefore not be covered. However, long before this statutory enactment, the phrase "wage earning capacity" was well established as referring to an employee's " 'capacity to earn sufficient wages *in the same or another occupation*' . . . ." *Ward v Detroit Bd of Ed*, 72 Mich App 568, 573; 250 NW2d 130 (1976), quoting *Markey v S S Peter & Paul's Parish*, 281 Mich 292, 298; 274 NW 797 (1937) (emphasis added). I think it obvious that this enactment in no way changed the prevailing law that "wage earning capacity" pertains to the ability to earn wages at a job that is in some way appropriate for the employee. See *Sington v Chrysler Corp*, 467 Mich 144, 158-159; 648 NW2d 624 (2002). I believe referring to the statutory definition is therefore appropriate. However, in any event, the same reasoning would lead me to conclude that it is utterly preposterous and unacceptably dangerous to regard illegal activities as "jobs."

tute good evidence of a capacity for gainful employment.

Credibility of a witness is generally relevant. See *People v Layher*, 464 Mich 756, 761-764; 631 NW2d 281 (2001); *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). As noted, the specific acts in which a benefits claimant has engaged can certainly constitute evidence of ability to engage in those acts. Here, however, the additional evidence would not show that plaintiff was able to perform physical or mental feats that he contended he could not. The medical testimony that the magistrate deemed credible showed that plaintiff was essentially limited to sedentary activities. In other words, there was no actual dispute that plaintiff could theoretically earn income through some hypothetical sedentary work. According to Exhibit D, plaintiff was merely a signatory on accounts used to funnel money out of the country illegally; evidence supporting that allegation would prove nothing of value beyond, possibly, the profitability of the operation. The fact that an illegal activity was more or less profitable does not, in my opinion, cast any light on plaintiff's credibility regarding what he could actually perform as legitimate employment.

I do agree with the lead opinion that the magistrate erred to the extent that her decision can be interpreted as a conclusion that plaintiff did not *commit* a crime purely because he did not *plead guilty of* that crime. The magistrate's exclusion of evidence pertaining to crimes to which plaintiff did not plead guilty could have had the effect of excluding potential evidence of crimes plaintiff actually perpetrated. Furthermore, I agree that excluding an exhibit, for whatever reason, does not per se necessitate exclusion of other evidence relating to the subject matter of that exhibit. I cer-

tainly agree that, in principle, *actual work* a benefits claimant performs under the table *can* be evidence that the claimant is capable of engaging in gainful employment, or evidence of "a job reasonably available." What I cannot accept is the contention that acquiring money through illegal conduct is *inherently* proof of the same. Consequently, I cannot agree that the magistrate's error warrants reversal in this matter.

Therefore, I understand defendant's argument that it should, in the abstract, have been permitted to show that plaintiff was physically performing actions that would also be performed in the course of gainful employment, therefore proving a capacity for that gainful employment. Practically, however, I can find absolutely nothing in defendant's brief beyond hyperbolic bluster and rather suspiciously pious appeals to emotion to suggest that it could have presented evidence of any such acts. Rather, defendant refers to plaintiff as some kind of criminal mastermind but provides not a scintilla of support for that characterization. Plaintiff is undisputedly a criminal, there was likely little doubt that his honesty is somewhat less than absolute, and he might very well be a "bad person," but entitlement to workers' compensation benefits is in no way based on those considerations. Our role as a court is to implement the law rather than our own whimsical personal opinions about whether any given individual deserves to be more equal under the law than anyone else.

Had defendant even submitted so much as a minimal offer of proof, or if the crimes had been at all related to plaintiff's work with defendant, I would accept that the decision to remand might make sense, depending on the nature of the proofs offered. Again, I agree that evidence of the actual conduct in which a

claimant has engaged is relevant and should be considered to the extent that conduct consists of acts that would be performed in the course of gainful employment. Nevertheless, that would be true whether the conduct was legal *or* illegal. Defendant's argument amounts to a bare assertion, with which the lead opinion seemingly agrees, that profiting from a crime somehow equals proof of wage-earning capability. Defendant simply seeks to extrapolate too much, asking me to believe that plaintiff was a "criminal mastermind" without the basic decency to offer the slightest basis for why the existence of supporting evidence for that assertion is anything but hypothetical and speculative. Without that support, I cannot perceive any basis for undermining the MCAC's result.

I understand the lead opinion's position that, in theory, the magistrate should not ignore evidence of actual conduct by a benefits claimant that tends to demonstrate an ability to engage in gainful employment. However, beyond a perverse and disturbing implication that crime in fact does pay, I do not believe the omitted evidence that the lead opinion deems significant here would possibly have done so. Consequently, I would affirm.